# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Montgomery County                 :
Conservation District,            :
                                  :
                    Appellant     :
                                  :
          v.                      : No. 1103 C.D. 2019
                                  : Argued: June 11, 2020
Jeffrey Bydalek, Lenape Valley    :
Engineering, NVR, Inc., Red       :
Fox Farm Community Association,   :
Red Fox Partners GP LLC,          :
Red Fox Partners LP               :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge[1]
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE WOJCIK                              FILED: July 8, 2021


        In this interlocutory appeal by permission, the Montgomery County
Conservation District (MCCD) challenges the order of the Court of Common Pleas
of Montgomery County (trial court) that partially granted the MCCD's motion for
summary judgment upon determining that the MCCD was entitled to sovereign
immunity, pursuant to Sections 8521-8527 of the Judicial Code, commonly referred
to as the Sovereign Immunity Act, 42 Pa. C.S. §§8521-8527, in defense of some of

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge
Leavitt as President Judge.

the claims asserted in Jeffrey Bydalek's (Bydalek) second amended complaint. The issues before us relate to whether the MCCD is entitled to sovereign immunity as to all claims, particularly those seeking permanent injunctive relief for violations of the Storm Water Management Act (SWMA).[2] For the reasons that follow, we reverse and remand.

## I. Background

Bydalek initiated this action by filing a complaint with the trial court, which he amended twice,[3] against the MCCD and other defendants,[4] asserting causes of action based in tort and the SWMA violations for property damage from excessive stormwater runoff allegedly caused by construction at the neighboring Red Fox Farm. In support, Bydalek alleged that he owns property at 1907 Skippack Pike, Blue Bell, Pennsylvania, which is located in Montgomery County. In October 2014, shortly after Bydalek purchased his property, construction at the Red Fox Farm began, which involves the development of a 27-home residential development on what was previously a horse farm. Bydalek claims that, once construction began, he experienced stormwater runoff from the development, which has caused and continues to cause damage to his property. Second Amended Complaint, ¶¶1, 37, -41; R.R. at 7a, 12a-13a.

---

[2] Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. §§680.1-680.17.

[3] In the second amended complaint, Bydalek added the MCCD as a defendant. Second Amended Complaint, ¶10; Reproduced Record (R.R.) at 9a.

[4] The remaining defendants are Lenape Valley Engineering, NVR, Inc., Red Fox Farm Community Association, Red Fox Partners GP LLC, and Red Fox Partners LP. They have chosen not to participate in this limited appeal.

2

Bydalek asserted five counts: Count I – Trespass; Count II – Negligence; Count III - Private Nuisance; Count IV – Violations of Section 13 of the SWMA, 32 P.S. §680.13; Count V – Public Nuisance *per se* pursuant to Section 13(a) of the SWMA; and Count VI – Injunctive Relief. Bydalek directed Counts II, IV and V toward the MCCD, as well as other defendants.

With regard to the claims against the MCCD, Bydalek alleged that the MCCD "is a subdivision of the Commonwealth of Pennsylvania, operating under the supervision of the State Conservation Commission of the Pennsylvania Department of Agriculture." Second Amended Complaint, ¶10; R.R. at 9a. The "MCCD is responsible for, *inter alia*, oversight of stormwater management practices. [The] MCCD reviews stormwater plans for development projects and inspects sites in Montgomery County, Pennsylvania[,] as they are built." Second Amended Complaint, ¶10; R.R. at 9a. The MCCD inspected Red Fox Farm in November 2016 and determined it did not meet the requirements for a Post Construction Stormwater Management (PCSM) system. Second Amended Complaint, ¶70; R.R. at 17a. In May 2017, the MCCD conducted a final inspection, approved the PCSM system, issued a permit, and designated defendant Red Fox Farm Community Association as the entity responsible for the long-term operation and maintenance of the PCSM best management practices. Second Amended Complaint, ¶¶71-72; R.R. at 17a.

In Count II, Bydalek alleged that the MCCD had "a duty to exercise reasonable care when reviewing stormwater management plans for development"; "to inspect sites as they are built"; and "to approve or oversee land development and earth disturbance activities." Second Amended Complaint, ¶¶104-06; R.R. at 21a. Bydalek claimed that the MCCD breached this duty by "[f]ailing to inspect the

3

[stormwater] system that was implemented to ensure that it was adequate and effective for the volume of runoff that was flowing from its property;" "[f]ailing to take all reasonable precautions necessary to reduce the risk of runoff to neighboring landowners;" "[a]pproving plans which adversely altered the direction, velocity and volume of rainwater from Red Fox Farm;" and "failing to inspect the [stormwater] system that was implemented to ensure that it was adequate and effective for the volume of runoff that was flowing from its property." Second Amended Complaint, ¶109(c), (d), (f), (g); R.R. at 22a; *see* Bydalek's Brief at 10. In Counts IV and V, Bydalek alleged that the MCCD violated Section 13 of the SWMA, 32 P.S. §§680.13. Second Amended Complaint, ¶¶127, 131-32; R.R. at 26a, 27a. Bydalek sought a combination of monetary damages and permanent injunctive relief from the MCCD.

In response, the MCCD filed preliminary objections (POs) arguing that it was entitled to sovereign immunity and that Bydalek failed to state a viable SWMA cause of action against the MCCD. The trial court overruled the MCCD's POs without an opinion. The MCCD then filed an answer with new matter to the second amended complaint, setting forth the affirmative defense of sovereign immunity. Following discovery, the MCCD filed a motion for summary judgment reasserting sovereign immunity as a defense to all claims.

By interlocutory order dated June 6, 2019, the trial court granted in part and denied in part the MCCD's motion for summary judgment. Specifically, the trial court granted judgment in favor of the MCCD and against Bydalek and all other defendants as to Count II (negligence claim). The trial court also granted the MCCD's motion insofar as Counts IV and V (the SWMA violations) sought monetary damages but denied the motion to the extent these counts sought injunctive

4

relief against the MCCD. The trial court did not issue an opinion explaining its ruling. On July 16, 2019, the trial denied the MCCD's motion to amend its June 6, 2019 interlocutory order for immediate appeal under Section 702(b) of the Judicial Code, 42 Pa. C.S. §702(b).[5] The MCCD then requested permission to file an interlocutory appeal with this Court, which we granted.[6]

## II. Issues

In the order granting the MCCD permission to appeal, we limited our review to the following issues:

---

[5] This section provides:

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa. C.S. §702(b).

[6] Our review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Freeman-Bennett v. York County Board of Assessment Appeals,* 209 A.3d 1137, 1141 n.4 (Pa. Cmwlth. 2019) (quoting *Kaplan v. Southeastern Pennsylvania Transportation Authority*, 688 A.2d 736, 738 n.2 (Pa. Cmwlth. 1997)). "[S]ummary judgment is appropriate only in those cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *SEDA-COG Joint Rail Authority v. Carload Express, Inc.*, 238 A.3d 1225, 1232 (Pa. 2020). In this case, the issue of whether the MCCD is a Commonwealth entity entitled to sovereign immunity against the SWMA claims for injunctive relief involves a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *Id.* Although Bydalek contends that summary judgment was inappropriate here because material facts remain in dispute, the disputed facts are not material to our disposition of this legal issue.

5

(1)     Whether [the MCCD] is an instrumentality of the Commonwealth such that it may invoke the affirmative defense of sovereign immunity.

(2)     Whether the [t]rial [c]ourt erred in denying the MCCD's motion for summary judgment on . . . Bydalek's claims for injunctive relief where the [t]rial [c]ourt concluded the MCCD is immune from . . . Bydalek's tort claims and claims for monetary damages.

(3)     Whether the MCCD is a "landowner" or "any person engaged in the alteration or development of land" pursuant to Section 13 of the [SWMA] . . . and, therefore, subject to a claim for injunctive relief.

*Montgomery County Conservation District v. Bydalek* (Pa. Cmwlth., No. 1103 C.D. 2019, filed September 18, 2019).

### III. Discussion
### A. Instrumentality of the Commonwealth

First, the MCCD argues that it is an instrumentality of the Commonwealth and, as such, is entitled to sovereign immunity against all of Bydalek's claims. The MCCD asserts that its "Commonwealth agency" status is bestowed through its enabling statute and by virtue of the Delegation Agreement between the MCCD and the Department of Environmental Protection (DEP). The MCCD maintains that it was exercising a regulatory function specifically delegated to it when inspecting and permitting Red Fox Farm.

The Sovereign Immunity Act acts as a bar to an action against Commonwealth parties for damages arising out of a negligent act where the damages would be recoverable under common law or statute. 1 Pa. C.S. §2310; Section 8522 of the Sovereign Immunity Act, 42 Pa. C.S. §8522(a). A "commonwealth party" is defined as "[a] Commonwealth agency and any employee thereof, but only with

6

respect to an act within the scope of his office or employment." Section 8501 of the Judicial Code, 42 Pa. C.S. §8501; *see Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Cmwlth. 1996).

As to whether the MCCD is a Commonwealth party entitled to sovereign immunity, we must determine "whether the entity was created by the state to perform a state function so that a judgment against it would, in essence, injure the state." *James J. Gory Mechanical Contracting, Inc. v. Philadelphia Housing Authority*, 855 A.2d 669, 677 (Pa. 2004). These same factors are not essential in determining whether an entity is a Commonwealth agency for jurisdictional purposes because a separate analysis applies. *Id.*; *see Finan v. Pike County Conservation District*, 209 A.3d 1108, 1116 (Pa. Cmwlth. 2019) (holding that a county conservation district was a local agency for jurisdictional purposes).

To determine whether the General Assembly intended an entity to be a Commonwealth agency for sovereign immunity purposes, we look to the entity's enabling legislation. *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*, 985 A.2d 909, 913 (Pa. 2009); *see, e.g.*, *Marshall v. Port Authority of Allegheny County*, 568 A.2d 931, 933-34 (Pa. 1990) (holding the Port Authority was entitled to sovereign immunity because its enabling legislation specifies that it is a Commonwealth agency); *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972, 976-77 (Pa. Cmwlth. 2002) (holding that the Montgomery County Health Department was not a Commonwealth agency but rather a local agency entitled to governmental immunity under its enabling legislation); *Battle v. Philadelphia Housing Authority*, 594 A.2d 769, 771 (Pa. Super. 1991) (holding the Philadelphia Housing Authority is a Commonwealth agency for purposes of sovereign immunity because its enabling

7

legislation declared it "a public body . . . exercising public powers of the Commonwealth as an agency thereof . . .").

The enabling legislation applicable here is the Conservation District Law (CDL).[7] Section 5(2) of the CDL provides: "Such a district, upon its creation, shall constitute a public body corporate and politic *exercising public powers of the Commonwealth as an agency thereof.*" 3 P.S. §853(2) (emphasis added).

Notably, the statute in *Marshall* contained virtually identical language that led the Supreme Court to conclude that the Port Authority of Allegheny County (PAT) was a Commonwealth agency. *Id.* at 933-34. In *Marshall*, the enabling statute provided: "There are hereby created bodies corporate and politic in counties of the second class, to be known as Port Authority of (insert name of county), which shall constitute public bodies corporate and politic; *exercising the public powers of the Commonwealth as an agency thereof.*" *Id.* (quoting Section 3(a) of the Second Class County Port Authority Act, Act of April 6, 1956, P.L. 1414, *as amended*, 55 P.S. §553(a)) (emphasis added). The Supreme Court opined: "In view of this plain statutory language, it would be impossible to conclude that PAT is anything other than an agency of the Commonwealth. PAT was created by the Commonwealth, rather than by local government, and acts as an agency of the Commonwealth . . . ." *Id.* at 934.

Based on the plain language of the CDL, the MCCD was created by the Commonwealth, acts as an agency of the Commonwealth, and is clearly part of the sovereign for immunity purposes. *See Marshall*, 568 A.2d at 934. The MCCD reviewed and permitted Red Fox Farm's PCSM plan pursuant to this enabling

---

[7] Act of May 15, 1945, P.L. 547, *as amended*, 3 P.S. §§849-864.

8

legislation.  Based on this authority alone,[8] we conclude that the MCCD is an instrumentality of the Commonwealth such that it may invoke the affirmative defense of sovereign immunity.  *See Marshall*.  We next examine whether this cloak of immunity extends to all claims, particularly those seeking injunctive relief for violations of the SWMA, or whether the General Assembly specifically waived immunity under the Sovereign Immunity Act or the SWMA.

## B. Sovereign Immunity Act

Next, the MCCD argues that Commonwealth agencies are generally immune from equitable claims seeking affirmative action by way of injunctive relief unless such claims fall within an exception to the doctrine of sovereign immunity or are otherwise waived.  The MCCD contends that Bydalek's request for permanent injunctive relief from stormwater further damaging his property is affirmative in nature and, therefore, the MCCD is shielded by sovereign immunity.  Bydalek's claims do not otherwise fit within any of the exceptions to sovereign immunity under the Sovereign Immunity Act.

A Commonwealth party shall "remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. C.S. §2310.  "[S]overeign immunity [acts] as a bar to an action against Commonwealth parties, *for damages arising out of a negligent act* where the damages would be recoverable under the common law or a statute creating a cause of action if the injury was caused

---

[8] The MCCD also maintains that it was carrying out duties delegated to it by the Department of Environmental Protection pursuant to its Delegation Agreement, which it attached as part of the Reproduced Record.  *See* R.R. at 654a-61a.  However, the Delegation Agreement is not part of the original record as transmitted to this Court.  "The law is well settled that an appellate court may not consider documents that are not part of the [original] record."  *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 472 (Pa. Cmwlth. 2018).

9

by a person not having available the defense of sovereign immunity." 42 Pa. C.S. §8522(a) (emphasis added). Under the Sovereign Immunity Act, the General Assembly specifically waived immunity "to claims for damages" caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) national guard activities; and (9) toxoids and vaccines. 42 Pa. C.S. §8522(b). Exceptions to sovereign immunity under the Sovereign Immunity Act are to be strictly construed. *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54, 59 (Pa. Cmwlth. 2006).

"Sovereign immunity, however, will not bar certain suits in equity." *Id.* As our Supreme Court has opined:

> The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. *Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity.*

*Fawber v. Cohen*, 532 A.2d 429, 433-34 (Pa. 1987) (citations omitted) (emphasis added). "[T]he General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief" under the Sovereign Immunity Act. *Bonsavage*, 676 A.2d at 1331-32; *accord Swift v. Department of Transportation*, 937 A.2d 1162, 1168 (Pa. Cmwlth. 2007).

In *Bonsavage*, landowners sued the Pennsylvania Department of Transportation (PennDOT), along with the Commonwealth, the borough, and an

10

adjoining landowner in equity alleging failure to maintain storm sewer and sanitary sewer pipes that resulted in damage to the landowners' home and requesting injunctive and monetary relief. On sovereign immunity grounds, we dismissed the complaint against the Commonwealth and PennDOT. We opined that because the landowners sought to compel the Commonwealth and PennDOT to take affirmative action with respect to the sewer pipes, sovereign immunity shielded them from suit. *Bonsavage*, 676 A.2d at 1331. We explained that, while the General Assembly has waived sovereign immunity against Commonwealth agencies for damages arising out of a negligent act, it has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief. *Id.*; *see Youst v. Pennsylvania Department of Transportation*, 739 A.2d 625, 627 (Pa. Cmwlth. 1999).

Here, Bydalek's Second Amended Complaint seeks monetary and injunctive relief against the MCCD for negligence and violations of the SWMA. Bydalek claims that the MCCD failed to properly review stormwater system plans, and inspect, approve or oversee land development and earth disturbance activities as required under Section 13 of the SWMA. Insofar as Bydalek's Second Amended Complaint seeks monetary damages, none of Byadelek's claims fit within any of the enumerated statutory exceptions. *See* 42 Pa. C.S. §8522(b). Thus, the trial court properly ruled that the MCCD is immune from claims for monetary damages.

As for the injunctive relief sought for violations of Section 13 of the SWMA, it is predicated on the same acts and/or omissions and similarly does not fit within any of the sovereign immunity exceptions under Section 8522(b) of the Sovereign Immunity Act. Furthermore, Bydalek is not seeking to restrain the MCCD from performing affirmative acts; rather, he is seeking to compel the MCCD to take affirmative action -- to properly exercise its inspection and oversight duties.

11

The General Assembly did not waive immunity for equitable claims seeking affirmative action by way of injunctive relief under the Sovereign Immunity Act. *Youst*, 739 A.2d at 628; *Bonsavage*, 676 A.2d at 1331-32. However, our analysis on the issue of immunity does not end here, as we must also examine whether the General Assembly specifically waived immunity for such claims under the SWMA itself. *See Youst*.

## C. SWMA

The MCCD argues that the General Assembly did not specifically waive immunity for Commonwealth agencies under the SWMA. Relief under Section 15 of the SWMA, 32 P.S. §680.15, for Section 13 violations is only available against landowners or persons engaged in the development of land. Since the MCCD is neither a landowner nor engaged in the development of Red Fox Farm, Bydalek's SWMA claims against the MCCD must fail. The MCCD posits that it is difficult to comprehend how a court could fashion injunctive relief for which the MCCD would be responsible.

Section 13 of the SWMA, 32 P.S. §680.13, provides that "*any landowner or person engaged in alteration or development of land* that may affect [stormwater] runoff characteristics must implement measures under the applicable [stormwater] management plan to prevent injury to health, safety or other property." Such duties include assuring the maximum rate of stormwater runoff is not greater after development than what existed prior to development activities and managing the quantity, velocity and direction of resulting stormwater runoff. 32 P.S. §680.13.

Section 15 of the SWMA, 32 P.S. §680.15, provides:

> (a) Any activity conducted in violation of the provisions
> of this act or of any watershed [stormwater] plan,

12

regulations or ordinances adopted hereunder, is hereby declared a public nuisance.

(b) *Suits to restrain, prevent or abate violation of this act* or of any watershed [stormwater] plan, regulations or ordinances adopted hereunder, *may be instituted in equity or at law* by the department, any affected county or municipality, or any aggrieved person. . . . The expense of such proceedings shall be recoverable from the violator in such manner as may now or hereafter be provided by law.

(c) *Any person injured by conduct which violates the provisions of section 13 may*, in addition to any other remedy provided under this act, *recover damages caused by such violation from the landowner or other responsible person.*

Section 4 of the SWMA defines "person" as:

An individual, partnership, public or private association or corporation, firm, trust, estate, municipality, governmental unit, public utility or any other legal entity whatsoever which is recognized by law as the subject of rights and duties. *Whenever used in any section prescribing or imposing a penalty, the term "person" shall include the members of a partnership, the officers, members, servants and agents of an association, officers, agents and servants of a corporation, and the officers of a municipality or county, but shall exclude any department, board, bureau or agency of the Commonwealth*.

32 P.S. §680.4 (emphasis added).

In *Kee v. Pennsylvania Turnpike Commission*, 685 A.2d 1054, 1058-59 (Pa. Cmwlth. 1996), *affirmed*, 699 A.2d 721 (Pa. 1997), we determined that actions seeking to enforce the SWMA are not barred by the doctrine of sovereign immunity. Therein, the petitioners brought an action against the Pennsylvania Turnpike Commission (Commission) seeking, *inter alia*, an order directing the Commission

to comply with Section 13 of the SWMA by filing a comprehensive stormwater management plan for the expansion of its nonconforming service plaza. The Commission objected, claiming it was entitled to sovereign immunity. We determined that the plain language of the SWMA's definition of "person" clearly applies to state actors. *Kee*, 685 A.2d at 1059. We distinguished actions seeking to enforce the SWMA from actions seeking to impose monetary damages or other penalties. While recognizing that certain provisions of the SWMA imposing monetary and other penalties may not be enforced against a state agency, we rejected the notion that compliance with Section 13 of the SWMA constituted a "penalty" rather than a ministerial act. *Id.* Thus, insofar as the petitioners' mandamus action sought to compel the Commission to comply "with a clearly stated statutory duty" by filing a stormwater management plan, it was not barred by the doctrine of sovereign immunity. *Id.*

However, *Kee* is distinguishable from this case in one major respect. In *Kee*, the Commission owned the land and was engaged in the alteration or development of land. As a landowner or developer of land, the Commission was clearly subject to Section 13 of the SWMA and could not assert sovereign immunity against the enforcement claims. *Kee*. Here, the MCCD is not a landowner or a developer of Red Fox Farm but merely a Commonwealth agency responsible for the regulatory oversite of the property. Second Amended Complaint, ¶10; R.R. at 9a.

In order to restrain a violation under Section 15(b) of the SWMA, there must be an articulated violation of the SWMA applicable to the MCCD. Bydalek asserted only violations of Section 13 of the SWMA against the MCCD. *See* Second Amended Complaint, ¶¶123-27, 131; R.R. at 25a-27a. Because the MCCD is neither the landowner nor the developer of Red Fox Farm, the MCCD does not fall within

14

this limited exception to sovereign immunity for Section 13 violations and is immune from Bydalek's claims for injunctive relief.

## IV. Conclusion

Although the trial court properly determined that the MCCD was immune from any claims seeking monetary damages, the trial court erred by not extending immunity to the claims seeking injunctive relief for violations of the SWMA. Upon review, we conclude that the MCCD is entitled to sovereign immunity in this case because it is acting as an agency of the Commonwealth, and the claims against it do not fall within the exceptions to sovereign immunity under the Sovereign Immunity Act or the SWMA. Consequently, Bydalek's claims for injunctive relief against the MCCD for violations of Section 13 of the SWMA cannot stand. We, therefore, reverse the trial court's order in part insofar as it denied the MCCD's motion for summary judgment; we dismiss the MCCD as a party defendant in this case; and we remand this matter to the trial court for further proceedings against the remaining defendants.

_____
MICHAEL H. WOJCIK, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Montgomery County         :
Conservation District,       :
                         :
            Appellant   :
                         :
           v.           : No. 1103 C.D. 2019
                         :
Jeffrey Bydalek, Lenape Valley   :
Engineering, NVR, Inc., Red     :
Fox Farm Community Association,  :
Red Fox Partners GP LLC,     :
Red Fox Partners LP        :

O R D E R

AND NOW, this 8th day of July, 2021, the order of the Court of Common Pleas of Montgomery County (trial court), dated July 16, 2019, is REVERSED IN PART insofar as it denied Petitioner Montgomery County Conservation District's (MCCD) motion for summary judgment and AFFIRMED in all other respects. The MCCD is DISMISSED as a party defendant from this case, and this matter is remanded to the trial court for further proceedings against the remaining defendants.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge