# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica Markham, Victoria Markham, :
Jesse Charles, Pennsylvania Homecare :
Association, United Cerebral Palsy of :
Pennsylvania, :
            :
           Petitioners :
            :
           v. : No. 176 M.D. 2015
            : Argued: September 23, 2021
Thomas W. Wolf, in his Official :
Capacity as Governor of the :
Commonwealth of Pennsylvania, :
Department of Human Services, :
Office of Long Term Living, :
            :
           Respondents :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK           FILED:    October 20, 2021

Before the Court is the Application for Summary Relief (ASR) filed by Thomas W. Wolf, in his Official Capacity as Governor of the Commonwealth of Pennsylvania (Governor), the Department of Human Services (DHS), Office of Long Term Living (collectively, Respondents) to the Petition for Review in the Nature of a Complaint for Declaratory Judgment and Equitable Relief (PFR) filed by Jessica Markham, Victoria Markham, Jesse Charles, Pennsylvania Homecare Association, and United Cerebral Palsy of Pennsylvania (collectively, Petitioners),

following remand to this Court by the Pennsylvania Supreme Court in *Markham v. Wolf*, 147 A.3d 1259 (Pa. Cmwlth. 2016) (*Markham I*), *vacated and remanded*, 190 A.3d 1175 (Pa. 2018) (*Markham II*). We grant Respondents' ASR and dismiss Petitioners' PFR.

> This Court has summarized the relevant history of this case as follows:
>
> DHS administers the Commonwealth's home care services programs (HCSPs) and numerous Medicaid waiver programs pursuant to the Attendant Care Services Act (Act 150)[, Act of December 10, 1986, P.L. 1477, [No. 150,] 62 P.S. §§3051-3058]. Act 150 authorizes in-home personal (non-medical) care provided by Direct Care Workers (DCW[s]) to those individuals receiving in-home services rather than services in an institutional setting (Participant Model). Under the Participant Model, participants direct the services received and recruit, hire, and manage the DCWs who work for them.
>
> Jessica Markham was a DCW employed to provide attendant care services via the Participant Model to her mother Victoria Markham (*i.e.*, a Participant). *See* [PFR] at 5, ¶¶6-7. Jesse Charles is also an HCSPs consumer (*i.e.*, a Participant). *See* [PFR] at 6, ¶8.
>
> In an effort to improve home care quality and DCW working conditions by creating an employee organization, on February 27, 2015, [the Governor] signed [Executive Order 2015-05 (EO 2015-05), 4 Pa. Code §§7a.111-7a.117,] entitled "Participant-Directed Home Care Services," which, in Section 4, authorized [the] "creation each month of the DCW List, which includes the names and addresses of all DCWs who, within the previous three months, have been paid through a[n HCSP] that provides participant-directed services." [*Markham II*, 190 A.3d at 1179].
>
> On April 6, 2015, based in part upon their concern that "the purpose of the DCW List is to provide a list of eligible voters to labor organizations interested in

organizing the [DCWs] so that they may be solicited" by the prospective employee organization, [PFR] at 29, ¶51, Petitioners filed an original jurisdiction action in this Court alleging, *inter alia*, that [EO 2015-05] violates their "privacy interest[s] in not having their personal contact and other private information disclosed by the Commonwealth to any labor unions without their consent." [PFR] at 56, ¶205; *see also* [PFR] at 55-58, ¶¶200-211. The parties filed cross-[ASRs].

This Court ruled, *inter alia*, that Section 4 of the [EO 2015-05] was invalid, and enjoined the enforcement thereof. *See Markham* [*I*]. Respondents appealed to the Supreme Court. In *Markham II*, the Supreme Court rejected the bases upon which this Court found the executive order invalid, and remanded the case, stating:

> Without a record or a lower court analysis of the Executive Order and the application of the balancing test contemplated by our recent decision in *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) [(*PSEA*)], we are compelled to **remand this case to the Commonwealth Court to address this issue in the first instance, and to conduct further proceedings if necessary**.
>
> Thus, for the reasons set forth above, we vacate the Commonwealth Court's determination that [EO 2015-05] is infirm. However, because the **Commonwealth Court did not reach [Petitioners'] claim that [EO 2015-05's] distribution of the DCW List impacts upon DCWs' and [P]articipants' privacy rights**, we remand the matter so that the Commonwealth Court may address it.

*Markham II*, 190 A.3d at 1190 (emphasis added; footnote omitted). Thus, the Supreme Court remanded the matter for this Court to undertake the *PSEA* balancing test to determine whether the public interest in releasing a person's name, address and other personal information

3

outweighs the person's (*i.e.*, DCWs and Participants) interest in keeping the information private. *Id.*

> However:
>
> During the pendency of this action, the services provided by Jessica Markham to . . . Victoria Markham were changed from the [HCSPs] to a Medicare program. Thus, while Jessica [Markham] continues to provide in-home care to Victoria [Markham], Jessica [Markham] is no longer a DCW under the [HCSPs].

[PFR] at 6, ¶25.

> On August 9, 2019, [James C.] Taylor, a DCW who provides services to Petitioner Jesse Charles through a[n HCSP], filed [a] Petition [to Intervene] in this matter, arguing that because Petitioner Jessica Markham is no longer a DCW and, thus, there is no DCW remaining in this case, he should be permitted to intervene. *See* Petition at 7, ¶¶26-27, at 10, ¶40. On August 23, 2019, Respondents filed an Answer to Taylor's Petition.
>
> On September 6, 2019, this Court scheduled a hearing on Taylor's Petition for October 15, 2019. On September 24, 2019, Respondents filed the Application to Dismiss, stating that since Petitioner Jessica Markham is no longer a DCW, the case is no longer active. On October 8, 2019, Petitioners filed an Answer to the Application to Dismiss. On October 15, 2019, a hearing was held on the Petition and argument was conducted on the [Application].

*Markham v. Wolf* (Pa. Cmwlth., No. 176 M.D. 2015, filed October 24, 2019) (*Markham III*), slip op. at 2-4 (emphasis in original).

Ultimately, following the hearing, this Court issued an order granting the Petition to Intervene on the bases that "Taylor is a DCW that could have joined this litigation at its inception" under Pa.R.Civ.P. 2327(3); "Taylor clearly has a strong interest in the outcome of this litigation," under Pa.R.Civ.P. 2327(4), "as the

4

only remaining issue is the privacy issue (*i.e.*, whether the public interest in releasing a DCW's name and address and other personal information outweighs individual privacy interests)"; and "Taylor is not disqualified by any of the three enumerated grounds to refuse intervention" under Pa.R.Civ.P. 2329. *Markham III*, slip op. at 7. Finally, following argument, we denied the Application to Dismiss because, in remanding the matter, the Supreme Court recognized that "'[o]ften, the DCW is a [P]articipant's relative living with the [P]articipant'" and "that the privacy rights of both DCWs and Participants are at issue." *Id.* at 8 (quoting and citing *Markham II*, 190 A.3d at 1177, 1190). *See also* PFR at 56, 57, ¶¶205, 206 ("[DCWs] have a privacy interest in not having their personal contact and other private information disclosed by the Commonwealth to any labor unions without their consent," and "[m]any [DCWs] reside in the same dwelling as the Participants for whom they work" so that "[t]he release of information about a [DCW] is, in many instances, a release of protected information about Participants.").

On April 20, 2021, Respondents filed the instant ASR[1] alleging, in relevant part, that Jessica Markham and James C. Taylor "no longer have a live case

---

[1] As this Court has recently explained:

> Applications for summary relief filed in this Court's original jurisdiction are governed by Pennsylvania Rule of Appellate Procedure 1532(b), Pa. R.A.P. 1532(b), which provides that "[a]t any time after the filing of a petition for review . . . , the court may enter judgment if the right of the applicant thereto is clear." An application for summary relief under Rule 1532(b) is evaluated according to standard for a motion for summary judgment. *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). A motion for summary relief may only be granted when "**the dispute is legal rather than factual**," there is **no genuine issue of material fact**, and the moving party is entitled to judgment as a matter of law. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220

**(Footnote continued on next page…)**

5

or controversy against Respondents as it relates to the remaining claim that [Section] 4 of [EO 2015-05[2]] violates their right to privacy" because neither are employed as

(Pa. Cmwlth. 2018) (emphasis added). The evidence is to be reviewed in a light most favorable to the non-moving party. *MFW Wine Co.* [*v. Pennsylvania Liquor Control Board*, 231 A.3d 50, 56 (Pa. Cmwlth. 2020) (Brobson, J.)]. "Even if the facts are undisputed, the moving party has the burden of proving that its right to relief is so clear as a matter of law that summary relief is warranted." *Naylor v. Dep*[*artment*] *of Pub*[*lic*] *Welfare*, 54 A.3d 429, 431 n.4 (Pa. Cmwlth. 2012). "Bold unsupported assertions of conclusory accusations cannot create genuine issues of material fact." *McCain v. Pennbank*, 549 A.2d 1311, 1313-14 (Pa. Super. 1988). "Summary [relief] may be entered only in cases that are clear and free from doubt." *Id.* at 1313.

*Delaware Riverkeeper Network v. Department of Environmental Protection* (Pa. Cmwlth., No. 525 M.D. 2017, filed August 3, 2021), slip op. at 13 (footnote omitted); *see also* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

[2] Section 4(a) and (c) of EO 2015-05 states:

a. The Secretary [of Human Services (Secretary)] shall compile a list each month of the names and addresses of all [DCWs] (DCW List) who, within the previous 3 months, have been paid through a[n HCSP] that provides participant-directed services. The DCW List shall specify every program through which each [DCW] was paid. However, the DCW List may not include the name of any participant, any designation that a [DCW] is a relative of a participant, or any designation that the [DCW's] home address is the same as a participant's address.

\* \* \*

c. Upon a showing made to the Secretary by an employee organization [with a primary purpose of DCW representation in employment relations] described in subsection (b) that at least 50 [DCWs] support the organization's petition to provide

**(Footnote continued on next page…)**

6

DCWs subject to its provisions so that their claims in this regard are now moot. ASR at 10-11, 13-15, ¶¶ 20-22, 25-27.[3] Likewise, Respondents assert that "there is no live case or controversy, as it relates to this privacy claim, between Victoria Markham, Jesse Charles, Pennsylvania Home Care Association, and United Cerebral Palsy of Pennsylvania and Respondents." *Id.* at 11, ¶21.

In relevant part, the Supreme Court's opinion remanding the matter to this Court states:

> [Petitioners] claim [EO 2015-05] violates the privacy rights of DCWs and [P]articipants. Specifically, [Petitioners] assert that [EO 2015-05] impermissibly allows the Commonwealth to distribute the name, home address, telephone numbers, and email addresses of 20,000 DCWs to any qualified representative candidate through the DCW List, citing our recent decision in [*PSEA*[4]]. . . . While [Respondents] claim to have taken

---

> representation, the Secretary shall provide to the organization, within 7 days, the most recent DCW List, and, for an additional 6 months thereafter, upon request shall supply subsequent monthly lists.

4 Pa. Code §7a.114(a), (c). *See also* Section 1 of EO 2015-05, 4 Pa. Code §7a.111 ("[*DCW*] *List*- A monthly list . . . of the names and addresses of all [DCWs] who have within the previous 3 months been paid through a [HCSP.] The list shall specify the program through which each [DCW] is paid, but nothing that would identify the name of any participant.").

[3] It is undisputed that Markham and Taylor, the only DCW parties to this action, are no longer working as DCWs subject to the provisions of Section 4 of EO 2015-05. *See, e.g.*, PFR at 6, ¶25; Petitioners' Answer to Respondents' Application for Summary Relief at 1.

[4] Specifically, Count IV of the PFR alleges, in pertinent part:

> Because [EO 2015-05] conflicts with the confidential[ity] provisions of the Attendant Care Waiver and the Aging Waiver and interferes with the privacy interests of [DCWs] and their Participant

**(Footnote continued on next page…)**

7

steps to comply with *PSEA*, the record does not reflect post-*PSEA* modifications to the processes employed by [EO 2015-05]. Without a record or a lower court analysis of [EO 2015-05] and the application of the balancing test contemplated by our recent decision in *PSEA*, we are compelled to remand this case to the Commonwealth Court to address this issue in the first instance, and to conduct further proceedings ***if necessary***.

*Markham II*, 190 A.3d at 1189-90 (footnote omitted and emphasis added).

With respect to the Supreme Court's remand instructions, this Court recently observed:

> Pa. R.A.P. 2591(a) states, in pertinent part: "On remand of the record the . . . government unit below shall proceed in accordance with the judgment or other order of the appellate court[.]" *See also* Section 706 of the Judicial Code, 42 Pa. C.S. §706 ("An appellate court may affirm [or] vacate . . . any order brought before it for review, and may remand the matter and . . . require the entry of such appropriate order . . . as may be just under the circumstances.").
>
> As this Court has explained:
>
> "[I]t has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order."

---

employers, [EO 2015-05] conflicts with existing law and should be enjoined.

PFR at 58, ¶211 (footnote omitted). *See also* PFR at 56, ¶205 ("[DCWs] have a privacy interest in not having their personal contact and other private information disclosed by the Commonwealth to any labor unions without their consent."); *id.* at 57, ¶206 ("Many [DCWs] reside in the same dwelling as the Pa[r]ticipants for whom they work. The release of information about a [DCW] is, in many instances, a release of protected information about Participants."); *id.* at 59-60, ¶218 ("[T]he Attendant Care Waiver Application and the Aging Waiver Application both require entities to protect and provide appropriate safeguards for the records of all Participants and [DCWs]; thus, [EO 2015-05's] mandate that the Commonwealth collect and create lists of this private information, and presumably share it with labor organizations without the [DCWs'] consent, is contrary to existing law.").

8

> *Commonwealth v. Sepulveda*, [144 A.3d 1270, 1280 n.19 (Pa. 2016)]. In *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth. [2014)], which the Supreme Court cited with approval in *Sepulveda*, this Court explained: "Where a case is remanded for a specific and limited purpose, 'issues not encompassed within the remand order' may not be decided on remand. A remand does not permit a litigant a 'proverbial second bite at the apple.'" [*Id.*] at 442 (quoting *In re Indep*[*endent*] *Sch*[*ool*] *Dist*[*rict*] *Consisting of the Borough of Wheatland*, 912 A.2d 903, 908 (Pa. Cmwlth. 2006)).
>
> *Marshall v. Commonwealth*, 197 A.3d 294, 306 (Pa. Cmwlth. 2018), *aff'd*, 214 A.3d 1239 (Pa. 2019). Accordingly, we will not consider any issues that have been raised that are beyond the confines of our remand order herein.

*Marshall v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1115 C.D. 2019, filed October 8, 2020), slip op. at 9-10.

Accordingly, on remand, we are limited to only considering the privacy claims of former DCWs Jessica Markham and James C. Taylor, and Participants Victoria Markham and Jesse Charles. Additionally, it must be noted that the Participants' privacy interest is secondary to that of the DCWs because, as the Supreme Court explained, "[o]ften the DCW is a participant's relative living with the participant." 190 A.3d at 1177.[5] Nevertheless, as indicated above, Section 4(a) of EO 2015-05 specifically provides that "the DCW List *may not include* the name of any participant, any designation that a [DCW] is a relative of a participant, or any designation that the [DCW's] home address is the same as a participant's address."

---

[5] *See also* PFR at 57, ¶206 ("Many [DCWs] reside in the same dwelling as the Pa[r]ticipants for whom they work. The release of information about a [DCW] is, in many instances, a release of protected information about Participants."); *id.* at 60-61, ¶220(d) ("Petitioner Jessica Markham, a [DCW], will be immediately and irreparably harmed if the Commonwealth discloses her name and confidential information to labor organizations without [her] consent.").

9

4 Pa. Code §7a.114(a) (emphasis added); *see also* Section 1 of EO 2015-05, 4 Pa. Code §7a.111 ("The list shall specify the program through which each [DCW] is paid, ***but nothing that would identify the name of any participant***.") (emphasis added).

In considering Respondents' ASR claim that Petitioners' request for declaratory and injunctive relief is moot, this Court has observed:

> Petitions for declaratory judgments are governed by the provisions of the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541. Although the Declaratory Judgments Act is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be ripe for judicial determination, meaning that there must be the presence of an actual case or controversy. Thus, the Declaratory Judgments Act requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named respondent.
>
> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. As the Pennsylvania Supreme Court has stated:
>
>> The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment. . . .
>>
>> Only where there is a real controversy may a party obtain a declaratory judgment.

> A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Brouillette v. Wolf*, 213 A.3d 341, 357-58 (Pa. Cmwlth. 2019) (citations omitted).

Additionally, as the Pennsylvania Supreme Court has observed:

> [C]ases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way-changes in the facts or in the law-which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

*In re Gross*, 382 A.2d 116, 119 (Pa. 1978) (citation omitted)

A federal court of appeals has explained:

> The touchstone of the mootness inquiry is whether the controversy continues to "touch [] the legal relations of parties having adverse legal interests" in the outcome of the case. *DeFunis v. Odegaard*, 416 U.S. 312, 317 [(1974)] (per curiam) (quoting *Aetna Life Ins*[*urance*] *Co. v. Haworth*, 300 U.S. 227, 240-41 [(1937)]). This "legal interest" must be more than simply the satisfaction of a declaration that a person was wronged. *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 [(1977)] (per curiam) (holding that a claim for declaratory relief is moot when no "present right" is involved and the primary interest is the emotional satisfaction from a favorable ruling).
>
> It is well established that what makes a declaratory judgment action "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion is [] the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 [(1987)]; *see also Rhodes v. Stewart*, 488 U.S. 1,

11

4 [(1988)] (per curiam) (explaining that as the plaintiffs are no longer in prison, their case against prison officials is moot). Hence, this court has explained that a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

*Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (citation omitted).[6]

*See also Chasan v. Platt*, 244 A.3d 73, 84 (Pa. Cmwlth. 2020), *appeal denied*, 253 A.3d 679 (Pa. 2021) ("At its core, the purpose of declaratory relief is to address an imminent dispute or actual controversy. The judicial acts that [the l]awyer complains of are in the past, such that the declaration would not aid in resolution of a current or imminent dispute.").

Moreover, a Commonwealth party shall "remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. §2310. "Sovereign immunity, however, will not bar certain suits in equity." *Stackhouse v. Pennsylvania State Police*, 892 A.2d 54, 59 (Pa. Cmwlth. 2006).

Indeed, as the Pennsylvania Supreme Court has explained:

The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. *Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity.*

---

[6] *See, e.g.*, *Cole v. Pennsylvania Department of Environmental Protection*, 257 A.3d 805 813 (Pa. Cmwlth. 2021) (stating that although the opinions of lower federal courts are not binding on this Court, "such decisions in factually similar cases with persuasive legal analysis may inform our disposition of the matter before us").

*Fawber v. Cohen*, 532 A.2d 429, 433-34 (Pa. 1987) (citations omitted and emphasis added). Thus, "the General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief" under the Sovereign Immunity Act. *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331-32 (Pa. Cmwlth. 1996).

In this case, Petitioners seek the following declaratory and injunctive relief:

> **WHEREFORE**, Petitioners respectfully request that this Honorable Court provide declaratory and equitable relief against [Respondents] as follows:
>
> (a) declaring that [EO 2015-05] is unenforceable as an unauthorized exercise of legislative power;
>
> (b) declaring that [EO 2015-05] directly conflicts and is contrary to the [Pennsylvania Labor Relations Act[7]] (and the [Public Employe Relations Act[8]], to the extent applicable);
>
> (c) declaring that [EO 2015-05] is inconsistent with the [HCSPs];
>
> (d) granting a permanent injunction in Petitioners' favor and against [the Governor] prohibiting any action by [the Governor], or any executive agency, department or contractor under his jurisdiction, in furtherance of [EO 2015-05];
>
> (e) issuing a directive to Respondents [Governor] and [DHS] to effect a return of all consumer and [DCW] related personal information disseminated pursuant to [Section 4 of EO 2015-05] including, but not limited to, names and addresses.

---

[7] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§211.1-211.15.

[8] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

13

PFR at 67-68.

However, even if we were to determine that the former DCWs' and Participants' privacy rights were violated under the balancing test outlined in *PSEA*,[9] we cannot grant the foregoing requested equitable relief. The privacy right violations alleged herein are solely and exclusively based upon Respondents' past disclosure of the former DCWs' personal information under Section 4 of EO 2015-05. No current DCW is a party to this action, so there is no present disclosure of this information relating to any of the parties to this action. Additionally, there is no allegation or indication that any DCW is currently residing with Victoria Markham or Jesse Charles thereby providing a basis upon which their personal information would be currently disclosed without their consent.

Moreover, contrary to Petitioners' assertion, none of the exceptions to the mootness doctrine[10] are present in this case. Like James C. Taylor, any current

---

[9] As the Supreme Court explained:

> In [*PSEA*], the [PSEA] sought an injunction to prevent the release of the home addresses of public school employees under the [Right-to-Know Law, Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104]. After exploring the right to privacy under the Pennsylvania Constitution, this Court concluded that our organic charter protects a person's address and other personal information from disclosure by the government unless the public interest in dissemination outweighs the privacy interest. After weighing what we deemed to be the strong privacy interests in protecting home addresses from disclosure against the negligible public benefit in disclosure, the Court found the balancing of these interests precluded disclosure of the employees' home address.

*Markham II*, 190 A.3d at 1190.

[10] The Supreme Court has stated: "We have reviewed moot matters, in our discretion, when the issue presented is one of great public importance or is one that is capable of repetition **(Footnote continued on next page…)**

14

DCW could have sought to intervene to obtain the requested equitable relief in this matter or could have filed his or her own PFR to protect his or her own privacy interest under *PSEA*, so the privacy issue raised herein, although important, is not one that is capable of repetition yet is likely to evade judicial review.

Finally, as outlined above, we may not grant the injunctive relief requiring affirmative action by the Governor and DHS. In sum, based on the change in circumstances of this matter and the applicable law, we cannot grant the declaratory or injunctive relief that has been requested in this case.[11]

Accordingly, Respondents' ASR is granted, and Petitioners' PFR seeking declaratory and injunctive relief is dismissed.

_____
MICHAEL H. WOJCIK, Judge

President Judge Brobson did not participate in the decision of this case.
Judge Crompton did not participate in the decision of this case.

_____

yet evading review." *Association of Pennsylvania State College and University Faculties v. Pennsylvania Labor Relations Board*, 8 A.3d 300, 305 (Pa. 2010).

[11] It should be noted that at the time that we filed our opinion in *Markham III* granting James C. Taylor's Petition to intervene in this matter, he was a current DCW subject to the disclosure requirements of Section 4 of EO 2015-05. Thus, our denial of the Application in that memorandum opinion is not inconsistent with our disposition in the instant memorandum opinion because there are no current DCWs who are a party to this action and subject to the disclosure requirements of Section 4 of EO 2015-05 at this time.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jessica Markham, Victoria Markham, :
Jesse Charles, Pennsylvania Homecare :
Association, United Cerebral Palsy of :
Pennsylvania, :
                        :
            Petitioners :
                        :
            v. : No. 176 M.D. 2015
                        :
Thomas W. Wolf, in his Official :
Capacity as Governor of the :
Commonwealth of Pennsylvania, :
Department of Human Services, :
Office of Long Term Living, :
                        :
          Respondents :

# **O R D E R**

AND NOW, this 20th day of October, 2021, the Application for Summary Relief filed by the above-named Respondents is GRANTED, and the Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief is DISMISSED.

_____
MICHAEL H. WOJCIK, Judge